UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

EDDY MOMPLAISIR,

                *Petitioner*,

   -*against*-

MICHAEL CAPRA,

                *Respondent*
------------------------------------------------------------X



13 Civ. 6118 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

This is a 28 U.S.C. § 2254 petition on remand from the Second Circuit which directs this Court to consider whether Petitioner Eddy Momplaisir is entitled to an evidentiary hearing on his ineffective assistance of counsel claim. *Momplaisir v. Capra*, 718 F. App'x 91, 92–93 (2d Cir. 2018). Petitioner filed his original § 2254 petition with this Court on August 16, 2013, claiming ineffective assistance of counsel, prosecutorial misconduct, and judicial misconduct relating to his criminal conviction of first degree rape, first degree criminal sexual act, and first degree sexual abuse. (Dkt. 1).[1] This Court adopted Magistrate Judge Ronald L. Ellis's Report and Recommendation dismissing all of Petitioner's claims as either procedurally barred or meritless. *Momplaisir v. Capra*, 2016 WL 1070848, at *1 (S.D.N.Y. Mar. 16, 2016). On appeal, the Second Circuit affirmed in part, vacated in part, and remanded. *Momplaisir v. Capra*, 718 F. App'x at 93. Specifically, the Second Circuit held that New York Criminal Procedure Law ("CPL") § 440.10(2)(c) did not bar Petitioner's three ineffective assistance of counsel claims because these claims challenged conduct not apparent from the trial record. *Id.* at 92. Considering Petitioner's

---

[1] Unless otherwise noted, citations refer to the civil docket 13-CV-6118 (PAC).

claims *de novo*, the Second Circuit dismissed two of Momplaisir's ineffective assistance of counsel claims, in which he alleged (1) that his counsel was ineffective for failing to call a rebuttal expert to challenge the state's DNA expert, and (2) that his counsel was ineffective for failing to seek the complainant's medical records, as meritless, but found his third claim, that his trial counsel failed to investigate witnesses who would testify about a romantic relationship between him and the complainant, potentially of merit. It thus remanded Momplaisir's third claim back to this Court with instructions to "determine whether petitioner has shouldered his burden to establish his entitlement to an evidentiary hearing . . . and if so, to hold that hearing." *Id.* at 93.

The Court has considered Petitioner's claim in light of the Second Circuit's instruction and finds Petitioner failed to meet his burden. Accordingly, Petitioner's motion for an evidentiary hearing is DENIED.

## BACKGROUND

In 2007, Petitioner was charged with first degree rape, first degree criminal sexual act, and first degree sexual abuse in New York State court. (Petition, Dkt. 1). At trial, the prosecutor's key witness was the complainant, VG, who testified that Petitioner raped her at knifepoint in his apartment in the Midway Hotel after a night of drinking and drug-use. (Trial Transcript ("TT") at 87, 90-114, 129-30, 164-176, 264.)[2] VG also testified that she had known the Petitioner since 2003, but never considered him more than a friend. (*Id.* at 83-89). On cross-examination, Petitioner's trial counsel challenged VG's credibility. He got her to admit that she was a long-time drug user who often became paranoid when using crack and that she both used crack and consumed a substantial amount of alcohol on the night of the alleged incident. (*Id.* at 136-41, 177). VG also acknowledged that she had sold drugs while receiving public assistance. (*Id.* at 150-51).

---

[2] The record from Petitioner's criminal trial and subsequent state filings was provided to the Court under seal and has not been docketed.

2

As the prosecution prepared to rest, defense counsel asked the court for a brief delay to secure the testimony of a key defense witness, Robin Romero. (*Id.* at 300-03). He said that Romero, a long-time desk clerk at the Midway Hotel, would testify that VG and Petitioner had a romantic relationship—testimony which was now essential given VG's denial of any such relationship. (*Id.*) The trial judge was dubious over the requested delay, but nonetheless permitted the adjournment. (*Id.*) That following Monday, Romero testified. (*Id.* at 404-05, 415-16, 420). In her testimony, Romero told the jury that she had seen VG and Petitioner together both inside and outside of the Midway Hotel, and that VG typically visited Petitioner every day he was at his residence in the hotel. (*Id.* at 405-08, 416-18). Romero further stated that she had seen Petitioner and VG hugging four or five times, although she had no memory of having seen them kiss. (*Id.* at 406-08, 417-19, 422). She also told the jury that she had seen Petitioner kissing and holding hands with another woman, not VG, on one occasion inside the hotel. (*Id.* at 419-22).

During summations, the prosecution criticized the defense for calling Romero as its sole witness, stating, "[i]f the defendant and [the complainant] really were in a romantic relationship, wouldn't they have brought you somebody else, a family member perhaps? A close friend?" (*Id.* at 478). Defense counsel, however, invoked Romero's testimony as further evidence that VG was a liar, and as proof that her decision to accuse Petitioner of rape was motivated by jealousy over his relationship with another woman. (*Id.* at 438-53).

The jury found Petitioner guilty on all counts. (*Id.* at 522-25). On November 18, 2007, the trial judge sentenced Petitioner, a second violent felony offender, to concurrent prison terms of fifteen years for the rape count and criminal sexual act count, and seven years for the sexual abuse count. (Petition at 1). Petitioner is currently serving that sentence at Sing Sing Correctional Facility in Ossining, New York. (*Id.*).

Petitioner's State Appeals

Before the Appellate Division, First Department in January, 2009, Petitioner argued that the jury verdict was against the weight of the evidence, the trial court erred in permitting testimony of a forensic examiner who had examined the victim soon after the assault, and Petitioner's sentence was excessive. (State Court Record ("SR") at 35, 39, 44). Petitioner also submitted a *pro se* brief on the appeal, asserting among other claims that his defense had suffered due to his incarceration and consequent inability to assist in the investigation of his own case. (SR at 106). According to Petitioner, he "could have best assisted [his] attorney by being outside of jail and free to gather information which both [his] attorney and his private investigator found most difficult to obtain." (SR at 105-06). Petitioner further noted the challenges posed by his community, stating, "[t]his is not an attack on the professionalism of the investigator, but rather their ability to penetrate and obtain information from people inside of a street culture permeated with drugs and prostitution." (*Id.*)

Following his direct appeal, Petitioner filed a CPL § 440.10 motion, arguing that his trial counsel was ineffective for failing to interview or call any of the six witnesses—VG's mother, VG's sister, and four of his neighbors—whose contact information he provided to defense counsel long before trial. (*Id.* at 152). According to Petitioner, these witnesses would have "satisfied the prosecutor's erroneous standard of having to have witnessed the holding of hands, kissing, and other intimate affections and displays of romantic attachments," and at least two could have "testified to the fact that they had witnessed complainant in the bed at the room of the [Petitioner]." (*Id.*) Petitioner acknowledged that defense counsel had called Romero to establish this fact, but he argued that defense counsel's representation was ineffective nonetheless. (*Id.*)

On May 22, 2012, the Supreme Court denied Petitioner's CPL § 440 motion to vacate. (*Id.*

4

at 208). Of relevance here, the judge rejected Petitioner's ineffective assistance of counsel claim as procedurally barred for failure to raise the claim on direct appeal. (*Id.* at 211). On May 7, 2013, the Appellate Division issued a certificate denying Petitioner's motion for leave to appeal because there were no valid questions of law or fact. (*Id.* at 243). Petitioner then filed his § 2254 habeas petition.

## DISCUSSION

### I. Legal Standard

To establish a claim of ineffective assistance of counsel, a petitioner must show (1) his counsel's representation "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984)), and, as a result, (2) he suffered prejudice, meaning that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Entitlement to an evidentiary hearing, in turn, requires a showing that a petitioner's allegations, taken as true, entitle him to federal habeas relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). The petitioner's allegations should be based on specific evidence in the record, and "[m]ere generalities or hearsay statements will not normally entitle the applicant to a hearing, since such hearsay would be inadmissible at the hearing itself." *LoCascio v. United States*, 395 F.3d 51, 57 (2d Cir. 2005). Still, given the unavailability of discovery at this stage, a petitioner "may need only to identify available sources of relevant evidence rather than obtain it." *Puglisi v. United States*, 586 F.3d 209, 213-14 (2d Cir. 2009). Here, since the state court never reached the merits of Petitioner's claim, the Court reviews the record *de novo*. *Momplaisir*, 718 F. App'x at 92.

5

## II. Analysis

Petitioner's claim must be denied because taking all of his allegations as true, his trial counsel was not ineffective, and he cannot show prejudice. When assessing a lawyer's conduct under *Strickland's* first prong, judicial scrutiny should be "highly deferential ... [and]...indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The court adopts "counsel's perspective at the time of and under the circumstances of trial," *Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007) (citation omitted), and assesses the challenged conduct, "look[ing] for legitimate justifications for that conduct, including justifications transparent on the record and justifications offered by counsel," *Greiner v. Wells*, 417 F.3d 305, 320 (2d Cir. 2005). Counsel's performance is not deficient absent a showing of "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

The decision of "whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation," *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir.), *cert. denied*, 522 U.S. 846, 118 S.Ct. 130, 139 L.Ed.2d 80 (1997), and Petitioner's allegations here offer no reason for exception. Petitioner's trial counsel decided to call Romero, a long-term employee of the Midway Hotel with no criminal record, (*see* TT at 408), as the defense's sole witness. Unlike Petitioner's four neighbors from the Midway Hotel, whose relationships with Petitioner would likely subject them to accusations of bias on cross-examination, *see Strickland*, 466 U.S. at 689; *Whiting v. La Clair*, 2012 WL 3930401, at *6 (E.D.N.Y. Sept. 7, 2012), or VG's sister and mother, whose relationship to VG would have likely made them hostile witnesses, *see Schulz v. Marshall*, 528 F. Supp. 2d 77, 93 (E.D.N.Y. 2007), *aff'd sub nom. Schulz v. Marshal*, 345 F. App'x 627 (2d Cir. 2009), Romero had no established

6

relationship to either Petitioner or VG. Her testimony was objectively neutral and detached, and it supported the defense's theory of the case without any concessions. Calling Romero as the sole defense witness falls comfortably within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Defense counsel's conversation with the trial judge at the close of the prosecution's case, during which he admits to having only days earlier sent his investigator to the Midway Hotel, does not rebut a finding of adequate representation. (*See* TT at 300-03). To the contrary, it demonstrates that Petitioner's trial counsel, after hearing the testimony of VG, realized the need for an additional witness and obtained one. Petitioner can also not argue that his trial counsel's pre-trial investigation was inadequate. He himself stated in his supplemental *pro se* brief on direct appeal that both his trial counsel and his investigator made efforts to contact witnesses leading up to trial, thwarted not by their own lack of diligence, but instead by the challenge of obtaining information from a "street culture permeated with drugs and prostitution." (SR 105-06). It may be the case of "snitches get stiches," but here, these allegations, taken as true, do not establish a deficient investigation.

Since Petitioner's defense counsel's conduct was not deficient, the Court need not reach *Strickland's* second prong and assess whether Petitioner was prejudiced. *Palacios v. Burge*, 589 F.3d 556, 566 (2d Cir. 2009). Nonetheless, the Court briefly notes that Petitioner's claim to prejudice is even weaker than his claim to deficient representation. While the prosecutor criticized the defense for calling Romero as its sole witness in summation, there is no evidence that Petitioner's witnesses, vulnerable to credibility attacks for a host of other reasons, would have fared any better in the prosecutor's summation. Furthermore, Romero's testimony provided all of the facts Petitioner alleges his witnesses would have provided, with the exception of testimony

about having seen VG in Petitioner's bedroom. Viewing the trial record as a whole, and considering the strength of the prosecution's case, this added detail would not have made a difference.[3]

## CONCLUSION

For the above stated reasons, Petitioner's motion for an evidentiary hearing is DENIED.

Dated: New York, New York
February __, 2019

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge

---

[3] The state also argues that Petitioner is procedurally barred from an evidentiary hearing for failing to develop the record in his CPL § 440.10 motion filed in state court. *See* 28 U.S.C. § 2254(e)(2); *Williams v. Taylor*, 529 U.S. 420, 434 (2000). Since the Court finds Petitioner's failed to meet his burden for an evidentiary hearing regardless, it does not reach this issue.